# NOT FOR PUBLICATION

## STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

## 14-254

**STATE OF LOUISIANA**

**VERSUS**

**DONTRALE DEMARKO PHILLIPS**

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 313,293
HONORABLE THOMAS M. YEAGER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

**SYLVIA R. COOKS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Jimmie C. Peters and John E. Conery, Judges.

**AFFIRMED.**

**James C. Downs, District Attorney**
**Brian D. Cespiva, Assistant District Attorney**
**Parish of Rapides**
**P.O. Drawer 1472**
**Alexandria, LA 71309**
**(318) 473-6650**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Douglas Lee Harville**
**Louisiana Appellate Project**
**400 Travis Street, Suite 1702**
**Shreveport, LA 71101-3144**
**(318) 222-1700**
**COUNSEL FOR APPELLANT:**
    **Dontrale Demarko Phillips**

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

On July 18, 2012, Defendant, Dontrale Demarko Phillips, entered a Circle K convenience store located on Masonic Drive in Alexandria, Louisiana and committed an armed robbery. During the robbery, Defendant discharged a silver handgun into the ceiling of the store. Cherie Moose, Defendant's girlfriend at the time, drove Defendant to the store, waited while the robbery was committed, and then drove Defendant from the scene. Moose later positively identified Defendant as the perpetrator of the crime. A shell casing was found at the scene, which was later matched to a handgun later found in a duffel bag in Defendant's bedroom.

On July 22, 2012, Defendant committed an armed robbery of a Subway restaurant located on Masonic Drive in Alexandria, Louisiana. Moose again drove Defendant to and from the scene, and later identified him as the perpetrator of the crime.

On July 29, 2012, Defendant committed another armed robbery, this time of a Dollar General store located on MacArthur Drive in Alexandria, Louisiana. Moose again drove Defendant to and from the scene, and later identified him as the perpetrator of the crime.

Defendant was charged by bill of information filed on October 29, 2012, with three counts of armed robbery, violations of La.R.S. 14:64. On the same date, Defendant moved to represent himself and waived his right to trial by jury. Defendant refused to enter a plea on November 30, 2012; thus, the trial court entered a plea of not guilty on his behalf.

On its own motion, the trial court appointed a sanity commission to examine Defendant. On March 18, 2013, the trial court found Defendant was unable to comprehend the proceedings against him and to assist in his defense. Defendant was subsequently committed to the custody of the Eastern Louisiana Health

2

System, Forensic Division. On June 10, 2013, the trial court found Defendant had the mental capacity to stand trial and to represent himself.

A bench trial commenced on December 10, 2103, with Defendant representing himself with the assistance of "hybrid counsel." Defendant was subsequently found guilty as charged. On December 17, 2013, Defendant was sentenced to serve thirty years at hard labor without benefit of probation, parole, or suspension of sentence on each count, to run consecutively. After he was sentenced, Defendant filed a *pro se* motion to appeal in open court, which was granted. A *pro se* supplemental motion for appeal was filed on December 30, 2013, and was subsequently granted.

A *pro se* motion to reconsider sentence was filed on January 9, 2014, and denied the same day. A second *pro se* motion to reconsider sentence was filed on January 21, 2014, and was denied the following day.

Defendant is now before this court asserting one counsel-filed assignment of error. Therein, he contends the trial court erred in imposing sentences that are unconstitutionally excessive. Defendant also filed two *pro se* briefs in this matter in which he asserts the following assignments of error: 1) the trial court committed reversible error when it denied Appellant's 6th and 14th amendment rights of the United States Constitution and Article 1, § 13 of the Louisiana Constitution by failing to appoint counsel for Defendant at a critical stage in the proceedings and forcing Defendant to represent himself; 2) the trial court committed reversible error by admitting statements introduced in evidence against him at the preliminary examination where he was denied counsel at the trial through the oral testimony of the State's witnesses; and 3) the trial court erred in proceeding with the trial when no valid bill of information had been filed.

## ANALYSIS

In his counsel-filed assignment of error, Defendant contends the trial court erred in imposing sentences that are unconstitutionally excessive.

This court discussed the standard of review applicable to claims of excessiveness in *State v. Whatley*, 03-1275, pp. 5-6 (La.App. 3 Cir. 3/3/04), 867 So.2d 955, 958-59, as follows:

> The Eighth Amendment to the United States Constitution and La. Const. art. I, § 20 prohibit the imposition of cruel or excessive punishment. " '[T]he excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of this court.' " *State v. Dorthey*, 623 So.2d 1276, 1280 (La.1993) (quoting *State v. Sepulvado*, 367 So.2d 762, 764 (La.1979)). Still, the trial court is given wide discretion in imposing a sentence, and, absent a manifest abuse of that discretion, we will not deem as excessive a sentence imposed within statutory limits. *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. However, "[m]aximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood*, 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225. The only relevant question for us to consider on review is not whether another sentence would be more appropriate, but whether the trial court abused its broad discretion in sentencing a defendant. *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
>
> The fifth circuit, in [*State v.*] *Lisotta*, [98-646 (La.App. 5 Cir. 12/16/98),] 726 So.2d [57] at 58, stated that the reviewing court should consider three factors in reviewing the trial court's sentencing discretion:
>
> 1. The nature of the crime,
>
> 2. The nature and background of the offender, and
>
> 3. The sentence imposed for similar crimes by the same court and other courts.

Defendant was convicted of three counts of armed robbery. Each count was punishable by imprisonment at hard labor for not less than ten nor more than ninety-nine years without benefit of probation, parole, or suspension of sentence. La.R.S. 14:64. Defendant received a sentence of thirty years at hard labor without benefit of probation, parole, or suspension of sentence on each count, to run consecutively.

4

At the sentencing hearing, Defendant stated he was twenty-nine years old and had completed the tenth grade. He worked at various jobs, including working in lumber yards. He did not recall when he last worked, had a daughter who was about to turn four years old, and did not pay child support.

The trial court then discussed Defendant's criminal history as follows:

Since 2001 in Alexandria, I see in '01 you were arrested for possession with intent, CDSI. That was dismissed. Possession of marijuana that went through City Court. Possession of CDSII in '01 that was dismissed. You've been convicted of remaining or, entering on premises in '02. You were charged with armed robbery in '02, but it was reduced to an attempted simple robbery in '03. You've been convicted of disturbing the peace in '03. You were arrested for possession with intent to distribute in '03. You were convicted of entry into an inhabited dwelling in '02. In exchange for that they dropped to contributing to the delinquency of a juvenile on that date. In '03 possession with intent to distribute was dismissed, and then a possession of CDSV was dismissed. Possession with intent to distribute in '09, firearm by a convicted felon in '09 were dismissed, and in '09 you had introduction of an electrical device in a correctional facility and you also had on the same date contraband in a correctional facility. You were originally, well, you were charged with simple battery in 2010. That went to Alexandria City Court. You had a domestic abuse strangulation in '10 that was reduced to a misdemeanor domestic violence. You had a misdemeanor false imprisonment that you were convicted of. You had a violation of a protective order that went to Alexandria City Court. You had a violation of protective order that was here in 2011. You had another possession with intent to distribute in 2011 that was not prosecuted. I don't even show that they have a file here. You have a pending possession CDSII in 308,683. You have a possession with intent CDSII in a school zone that was 2011. You had two of those. Obstructing of a public passage in 2011. Resisting arrest by violence in 2011. Then July 31, 2012, you have these three armed robberies. Firearm by a convicted felon, illegal use of a weapon, resisting arrest, resisting arrest, simple assault.

That is your record. It shows that you have thirty-three (33) bookings in our jail. . . .

The trial court then found Defendant was in need of correctional treatment or a custodial environment, and a lesser sentence would deprecate the seriousness of the crimes. The trial court reasoned Defendant knowingly created a risk of death or great bodily harm to more than one person, used threats of or actual violence during the commission of the offenses, and used and discharged a firearm during

the commission of the offenses. The trial court subsequently stated Defendant planned the offenses, did not have a good work or family history, did not have major family responsibilities, had not taken responsibility for his actions, and was not willing to make any restitution. The trial court further noted Defendant did not have sufficient education, training, and life experience to be rehabilitated and not be a danger to the public. The trial court found Defendant had been engaged in criminal conduct in Rapides Parish since 2001, and noted Defendant had been arrested twenty-eight times since he turned eighteen. The trial court also stated it believed Defendant was a danger to public safety and needed a sentence that would deter him in the future.

Despite the trial court's findings, Defendant contends, based on the facts of the case, a sentence of ninety years without benefit of probation, parole, or suspension of sentence is excessive.

In *State v. Thomas*, 98-1144 (La. 10/9/98), 719 So.2d 49, the supreme court found a sentencing range of thirty-five to fifty years is acceptable for a first felony offender convicted of armed robbery. In *State v. Square*, 433 So.2d 104 (La.1983), the supreme court affirmed the defendant's twenty-five-year sentence for one conviction of armed robbery despite his lack of a prior criminal record. In *State v. Jackson*, 04-1388 (La.App. 5 Cir. 5/31/05), 904 So.2d 907, *writ denied*, 05-1740 (La. 2/10/06), 924 So.2d 162, the fifth circuit affirmed the defendant's sixty-year sentence on each of two counts of armed robbery, to run concurrently, although he was a first offender.

In *State v. Douglas*, 389 So.2d 1263 (La.1980), the supreme court affirmed the defendant's ninety-nine-year sentence for armed robbery, noting he had three prior felony convictions. In *State v. Lagarde*, 07-123 (La.App. 5 Cir. 5/29/07), 960 So.2d 1105, *writ denied*, 07-1650 (La. 5/9/08), 980 So.2d 684, the fifth circuit affirmed the defendant's ninety-nine-year sentence for armed robbery, noting he

6

was a career criminal with two prior felony convictions. In *State v. Wilson*, 452 So.2d 773 (La.App. 4 Cir. 1984), the fourth circuit affirmed the defendant's ninety-nine-year sentence for armed robbery, noting his extensive arrest record and prior convictions for criminal trespass, possession of stolen property, soliciting for prostitution, and theft. In *State v. Jack*, 448 So.2d 725 (La.App. 5 Cir. 1984), the fifth circuit affirmed the defendant's ninety-nine-year sentence for armed robbery, noting his extensive juvenile record and adult convictions for theft and burglary.

In this case, Defendant received a sentence on each count that was within the sentencing range set forth by the supreme court for a first offender. The trial court, in its discretion, ordered those sentences to be served consecutively. La.Code Crim.P. art. 883. Based on the cases cited herein and Defendant's extensive criminal record, we find the sentences imposed are not excessive.

## *PRO SE* ASSIGNMENTS OF ERROR NOS. 1 & 2

In his first *pro se* assignment of error, Defendant contends the trial court committed reversible error when it denied his 6th and 14th amendment rights of the United States Constitution and Article 1, § 13 of the Louisiana Constitution by failing to appoint counsel for him at a critical stage in the proceedings and forcing him to represent himself. In his second *pro se* assignment of error, Defendant contends the trial court committed reversible error by admitting statements introduced in evidence against him at the preliminary examination where he was denied counsel at the trial through the oral testimony of the State's witnesses.

Defendant filed a *pro se* motion for preliminary examination. The hearing was held on August 27, 2012, at which the following discussion occurred:

MR. CESPIVA (Counsel for the State):

> Your Honor, this is a P. E. filed by Mr. Dontrale Phillips. I don't know if he's been assigned a lawyer, but its filed *pro se*.

THE COURT:

All right. Is Mr. Phillips here?

MR.  CESPIVA:

Your Honor, he's been picked up on 7/31, and he's serving 180 days.

THE  COURT:

Okay. Well, let's have a Preliminary Exam on Mr. Phillips?

THE  CLERK:

It's on an Armed Robbery?

MR.  CESPIVA:

Yes.

THE  CLERK:

I don't have an attorney in yet.

MR.  CESPIVA:

We don't have a lawyer either. And, I just got the file this morning.

THE  COURT:

He filed it In Proper Person. So - -

. . . .

THE COURT:

Come on, Mr. Phillips, if you would; you're here for a preliminary exam, sir, that you've requested. You do not have an attorney, so, you filed this *pro se*. So, what we're going to do is proceed with your preliminary exam.

Mr. Cespiva, if you would call your first witness, sir.

The trial court subsequently found there was probable cause to believe Defendant

committed three armed robberies.

At the conclusion of the preliminary examination, the trial court asked

Defendant if he had requested an attorney, and Defendant stated: "No, sir.  I'm

representing myself[.]"  Defendant subsequently moved to represent himself on

8

October 29, 2012, the date the bill of information was filed, and represented himself at trial with the assistance of "hybrid counsel."

In his *pro se* briefs, Defendant contends the trial court forced him to represent himself at the preliminary examination, did not advise him of his right to counsel, and he did not waive counsel. Defendant contends he was forced to cross-examine the State's witnesses and argue evidentiary matters without any understanding of substantive criminal procedure. Defendant notes that, on the date of the preliminary examination, the State and the court clerk informed the trial court that he had not been assigned an attorney. Defendant alleges the trial court informed him that his right to counsel attached once he was arraigned. Defendant asserts the preliminary examination was a critical stage of the proceedings, and his right to counsel attached at that time. Defendant further asserts he was not questioned about his desire to represent himself at the preliminary examination. Defendant contends this constitutional violation is not subject to the harmless error analysis. In support of this claim, Defendant cites *State v. Haider*, 00-231 (La.App. 3 Cir. 10/11/00), 772 So.2d 189.

In *Haider*, the defendant entered a dual plea of not guilty and not guilty by reason of insanity. No counsel appeared on the defendant's behalf at a competency hearing. This court stated it could not fathom someone with the defendant's mental problems attempting to intelligently question experts. In finding that the competency hearing was a critical stage of the proceedings, which necessitated the assistance of counsel, this court found decisive the fact that the defendant's only defense was his insanity. We consequently concluded the defendant's mental competency was the focus of his defense strategy throughout the proceedings, and the error was reversible.

Defendant has alleged there is a prohibition against the State's use at trial of anything that occurred at a preliminary hearing. In support of his statement,

9

Defendant notes *White v. Maryland*, 373 U.S. 59, 83 S.Ct. 1050 (1963), wherein the defendant, without the benefit of counsel, entered a guilty plea at the preliminary hearing, and that admission was subsequently used against him at trial. Under these circumstances, the Supreme Court held that the preliminary hearing was a critical stage in the proceedings and there was no need to determine whether prejudice resulted from the absence of counsel.

Defendant also contends the following:

> The trial court committed "reversible error by admitting testimony with regard to the co-defendant Cherie Moose's statements implicating Appellant and herself at his trial. The preliminary examination was a critical stage of the proceedings where the State there elicited testimony from its witnesses regarding Cherie Moose[']s confession implicating appellant and herself which was introduced in evidence against him at trial through the oral testimony of state witnesses, subsequently entering into the determination of his innocence or guilt and lack of counsel at the preliminary hearing where Appellant was forced to represent himself, confront and cross-examine state witnesses without the benefit of counsel requires reversal.

Defendant further contends this court should not determine whether prejudice resulted from the denial of counsel at the preliminary examination but should reverse his convictions even though he did not object to the introduction of such evidence.

The State contends the answer to the issues presented by the Defendant can be found in *State v. Savoie*, 07-914 (La.App. 3 Cir. 3/5/08), 982 So.2d 119, *writ denied*, 08-617 (La. 10/3/08), 992 So.2d 1011. Therein, this court concluded that a hearing held on the defendant's *pro se* motion to quash did not constitute a "critical stage" of the proceedings that required the appointment of counsel. In *Savoie*, this court stated:

> Although titled motions to quash, the grounds of the motions concerned the alleged violations of the Defendant's right to have counsel appointed within seventy-two hours of arrest, the failure to timely file a bill of information within sixty days of arrest, and finally, the failure to arraign him within thirty days of the filing of the bill. *See* La.Code Crim.P. arts. 230.1 and 701. These claims do not

concern the time limitation for the institution of prosecution or for the commencement of trial, which are valid grounds for a motion to quash. *See* La.Code Crim.P. art. 532(7) and *State v. Barnes*, 94-1411 (La.App. 4 Cir. 12/28/94), 648 So.2d 480. In *State v. Francois*, an unpublished writ bearing docket number 03-1324 (La.App. 3 Cir. 11/10/03), this court held that an Article 701(B) hearing is not a critical stage of the proceeding, and the right to counsel does not apply. We find the same would be true for hearings concerning alleged violations of La.Code Crim.P. art. 230.1, which, like Article 701 hearings, concern pretrial custody only, not dismissal of the charge. A hearing on an alleged violation of either article in no way potentially impairs a meaningful defense or a fair trial. Accordingly, we find the October 9, 2006 hearing was not a critical stage of the proceedings in this case. Thus, no error patent is recognized.

*Id.* at 122-23 (footnote omitted).

The State notes the *Savoie* court discussed *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854 (1975). In *Gerstein*, 420 U.S. 103, the Supreme Court addressed the issue of whether Florida's probable cause hearing was a critical stage in the proceedings. The Supreme Court found that, "[b]ecause of its limited function and its nonadversary character, the probable cause determination is not a 'critical stage' in the prosecution that would require appointed counsel." *Gerstein*, 420 U.S. at 122. The Supreme Court noted the probable cause determination affected the defendant's pretrial custody only, and the prosecution was not required to produce witnesses for cross-examination. The State asserts that Florida's probable cause hearing is akin to Louisiana's preliminary examination.

The State notes that in *Gerstein* the Supreme Court distinguished its prior holding in *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999 (1970). In *Coleman*, the Supreme Court determined that Alabama's preliminary hearing was a critical stage of the criminal process at which the accused is constitutionally entitled to the assistance of counsel. Coleman was not represented by counsel at the preliminary hearing. The Supreme Court noted that, although nothing that occurred at the preliminary hearing was used at Coleman's trial, the record did not reveal whether the defendant was otherwise prejudiced by the absence of counsel at the hearing.

11

The Supreme Court remanded the matter for a determination of "whether such denial of counsel was harmless error, . . . and therefore whether the convictions should be reinstated or a new trial ordered." *Id.* at 11.

The State asserts Defendant requested a preliminary examination after his arrest and before the institution of prosecution. The State asserts a "preliminary examination functions as a 'probable cause' determination and does not function in any manner that could potentially impair a meaningful defense or a fair trial." The State contends the trial court's ruling at a preliminary examination does not affect the State's right to file a bill of information or pursue an indictment even if the trial court determines there is not enough probable cause to hold a defendant in custody. Therefore, like Florida, Louisiana's preliminary examination is a probable cause hearing that does not constitute a critical stage of the prosecution.

Louisiana Code of Criminal Procedure Article 293 provides: "When a preliminary examination is ordered, the court shall conduct the examination promptly but shall allow the defendant a reasonable time to procure counsel."

In *State v. Jenkins*, 338 So.2d 276 (La.1976), the supreme court discussed preliminary examinations. It stated:

> Although all of the procedural safeguards of a criminal jury trial need not be afforded at a preliminary examination, the accused has a right to a hearing that insures a fair and impartial determination of the issue of probable cause. Absent an intelligent waiver thereof, the hearing may not be conducted without benefit of counsel for the defendant. La.C.Cr.P. art. 293; Art. I, § 13, La.Const. 1974; see *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). The hearing is to be full-blown and adversary [sic], and one in which the defendant is entitled to confront witnesses against him and to have full cross-examination of them. La.C.Cr.P. art. 294. . . .
>
> We also note that the right to a preliminary examination has been accorded the status of a constitutional right in felony cases in Louisiana by the adoption of Art. I, § 14, La.Const. of 1974. The convention in drafting this article contemplated the type of formal, adversary proceeding provided for by our Code, including the right to subpoena and cross-examine witnesses. Hargrave, *The Declaration of Rights of the Louisiana Constitution of 1974*, 35 La.L.Rev. 1, 49 (1974). The elevation of the right to a preliminary examination to a

constitutional guarantee reflects a recognition by the people of Louisiana of the importance of according an accused a prompt and thorough determination that there is sufficient cause to deprive him of his liberty.

At the same time, our La.Code of Criminal Procedure has specifically incorporated the concept that inconsequential defects in the conduct of the preliminary examination will not mandate release of the accused or rendering the proceeding invalid.

*Id.* at 279. *See also State v. Silbey*, 450 So.2d 710, 713 (La.App. 4 Cir. 1984).

Louisiana Code of Criminal Procedure Article 298 provides:

A person ordered held in custody following a preliminary examination shall not be discharged on a writ of habeas corpus or by other process because of any informality or error in the commitment or the proceedings prior thereto that does not substantially prejudice him. No preliminary examination shall be held invalid for any purpose because of an informality or error that does not substantially prejudice the defendant.

We find the question presented in this case is not answered by this court's decision in *Savoie.* The instant case does not involve alleged violations of La.Code Crim.P. arts. 701(B) or 230.1.[1] Based on *Jenkins*, 338 So.2d at 279, the instant case is distinguishable from *Gerstein*, 420 U.S. 103. In *Ditch v. Grace*, 479 F.3d 249 (3rd Cir. 2007), *cert. denied*, 552 U.S. 949, 128 S.Ct. 377 (2007), the defendant argued his habeas petition should be granted because he was denied the right to counsel at his preliminary hearing in violation of U.S. Const. amend. VI. The court concluded that a Pennsylvania preliminary hearing was a critical stage in a criminal prosecution, as the "Commonwealth may assume charge of the prosecution and recommend to the issuing authority that the defendant be discharged or bound over to court," the Commonwealth must establish a *prima facie* case that a crime has been committed and the accused was probably the person who committed it, and a principal function of the hearing was to protect the accused rights against an unlawful arrest and detention. *Id.* at 253. Because the

---

[1]These articles address the time period for filing a bill of information or indictment after arrest and the maximum time for appearance before a judge for the purpose of appointment of counsel, respectively.

13

preliminary hearing was a critical stage of a criminal prosecution, the court concluded that Ditch was entitled to the assistance of effective counsel at that hearing. Ditch was denied that right, as he informed the judge at the beginning of the hearing that he wished to secure representation and requested a continuance in order to do so, but the judge denied his request.

Citing *Coleman*, 399 U.S. 11, the court concluded that denial of counsel at a preliminary hearing did not automatically entitle an accused to vacatur and a new trial. Ditch also argued that a witness identification made at the preliminary hearing was later used against him at trial, and lack of counsel under these circumstances infected the entire proceeding and warranted vacatur. The court noted that *Coleman* did not address the appropriate relief in a case involving a denial of counsel at a preliminary hearing where evidence obtained from the hearing was later used against the defendant at trial. The court found the case was similar to *White*, 373 U.S. 59. However, the question of relief presented by the facts of the case was not squarely addressed by either *Coleman*, 399 U.S. 11, or *White*, 373 U.S. 59. The court went on the find that the denial of counsel at Ditch's preliminary hearing was subject to a harmless error standard even though evidence of the identification made at the hearing was later used against him at trial.

Ditch also argued that, because he was denied counsel at a critical stage of the proceedings, he was entitled to a presumption of prejudice under *U.S. v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039 (1984). In *Cronic*, the Supreme Court identified three situations implicating the right to counsel that involved circumstances so likely to prejudice the accused that the cost of litigating their effect in a particular case was unjustified. The first involved a complete denial of counsel. The Court explained that a trial would be presumptively unfair where the accused was denied the presence of counsel at a critical stage. The court, in *Ditch*,

14

479 F.3d 249, concluded that *Cronic*, 466 U.S. 648, prescribes a presumption of prejudice only with regard to those critical stages of litigation where a denial of counsel would necessarily undermine the reliability of the entire criminal proceeding. In support of this conclusion, the court cited *U.S. v. Owen*, 407 F.3d 222 (4th Cir.2005), *cert. denied*, 546 U.S. 1098, 126 S.Ct. 1026 (2006). In *Owen*, the court found the defendant impliedly waived his right to counsel at arraignment, and the denial of court-appointed counsel at arraignment was subject to a harmless error analysis.

In his second *pro se* brief, Defendant cites to several record pages containing testimony at the preliminary examination and his trial. At the preliminary examination, Corporal David Foshee discussed a statement made by Moose, in which she implicated Defendant to police. Corporal Foshee also mentioned that statement at Defendant's trial. Officer April Painter testified at trial that Moose implicated herself as the driver of the vehicle. Moose testified for the State at Defendant's trial, discussing her participation, as well as that of Defendant, in the offenses for which Defendant was convicted.

After a review of the facts in this case, we find it is distinguishable from *White*, 373 U.S. 59. It is clear that what made the preliminary hearing in *White* critical was the fact that a guilty plea had been entered at that hearing, and the plea had been used against petitioner at trial. In the instant case, Moose testified at Defendant's trial. Accordingly, any issue regarding testimony about Moose's statement to police at the preliminary hearing did not substantially prejudice the Defendant. Any error that may have occurred was harmless.

For the reasons set forth herein, Defendant's first and second *pro se* assignments of error lack merit.

## *PRO SE* ASSIGNMENT OF ERROR NO. 3

In his third *pro se* assignment of error, Defendant contends the trial court erred in proceeding with the trial when no "valid" bill of information had been filed.

In support of this claim, Defendant asserts that an error patent may be asserted at any time. However, Defendant fails to point to any error in the bill of information, nor that the record did not contain a bill of information. Thus, we cannot address this assignment of error, as it has not been sufficiently briefed by Defendant. *See* Uniform Rules—Courts of Appeal, Rule 2-12.4.

## DECREE

For the foregoing reasons, Defendant's convictions and sentences are affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules–Courts of Appeal, Rule 2-16.3.